UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PHILLIP LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 04-CV-152-DNH-RFT |
| | ) | |
| WILLIAM BONNANI, | ) | Honorable David N. Hurd |
| | ) | United States District Judge |
| Defendant. | ) | |

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
MOTIONS *IN LIMINE*

GETNICK LIVINGSTON ATKINSON
GIGLIOTTI & PRIORE, LLP

Patrick G. Radel, Esq., of Counsel
Bar Roll No: 512794
Attorneys for Plaintiff Philip Lewis
258 Genesee Street, Suite 401
Utica, New York   13502
Telephone (315) 797-9261

INTRODUCTION

Phillip Lewis, the plaintiff in this action, by and through his attorneys of record, Getnick Livingston Atkinson Gigliotti & Priore, LLP, submits this memorandum of law in support of his Motions in Limine in connection with the trial scheduled to begin on February 25, 2008.

BACKGROUND

**A.     Facts**

The facts of this § 1983 civil rights case, which are set forth in greater detail in the accompanying trial memorandum, may be briefly summarized as follows:

Plaintiff Phillip Lewis, an African-American, was arrested by police officers employed by the City of Albany on or about November 23, 2002. Plaintiff was handcuffed during the course of the arrest and forced to lay on the ground. Plaintiff has testified that while he was handcuffed, Defendant William Bonnani, a City of Albany Police Officer, stood on his head, laughed at him, and ground his face into the asphalt pavement. Plaintiff further testified that Defendant Bonnani performed an improper and illegal body cavity search in full view of other police officers and members of the general public.

It is undisputed that Plaintiff was injured during the arrest and was transported to Albany Memorial Hospital for medical treatment. Although he was listed as the arresting officer on the arrest report, Defendant Bonnani denies that he was an active participant in Plaintiff's arrest and denies that Plaintiff was subjected to excessive force and/or a body cavity search.

**B.     Claims**

Plaintiff asserts three (3) claims in this case: first, that Defendant Bonnani violated Plaintiff's Fourth Amendment rights by using excessive force during the arrest; second, that Defendant

Bonnani's conduct was motivated by racial animus, in violation of Plaintiff's equal protection rights; and third, that the City of Albany is liable for the violation of Plaintiff's constitutional rights because it failed to properly train and/or supervise Defendant Bonnani and failed to adequately address a pattern of unlawful conduct by Defendant Bonnani.

## MOTIONS IN LIMINE

**A.    Department Records Regarding Prior Complaints Are Admissible under Rule 404(b).**

Through discovery, Plaintiff obtained a copy of the personnel file maintained by the City of Albany Police Department with respect to Defendant Bonnani. The personnel file contained the following documents related to excessive force complaints filed by citizens and involving Defendant Bonnani:

| | | | |
|---|---|---|---|
| 1. | Ra-mel Patterson | APD OPS Confidential Report[1] | July/August 1996 |
| 2. | Ra-mel Patterson | Letter from Tuffey[2] | September 9, 1996 |
| 3. | Anthony Mackey | APD OPS Confidential Report | March 7, 1997 |
| 4. | Leslie Morton | APD OPS Confidential Report | June/September 1997 |
| 5. | Leslie Morton | Letter from Tuffey | October 7, 1997 |
| 6. | Neil Williams | APD OPS Confidential Report | July/October 1997 |
| 7. | Neil Williams | Letter from Tuffey | October 21, 1997 |
| 8. | Claudine Williams | APD OPS Confidential Report | August/October 1997 |
| 9. | Claudine Williams | Letter from Tuffey | October 21, 1997 |
| 10. | Jeanette McLune | APD Supervisor's Inquiry Report | undated |
| 11. | Jermaine Henderson | APD OPS Confidential Report | Oct 1997/Dec 1997 |
| 12. | Letter received by APD from Albert Moskowitz (DOJ)[3] | | July 20, 2001 |

---

[1] Albany Police Department Office of Professional Standards Confidential Report, which contains a detailed summary of the complaint, investigation, and ultimate departmental determination regarding the complaint.

[2] Letter from then-Chief of Police Kevin Tuffey to complainant advising of departmental determination regarding complaint.

[3] Letter from Department of Justice regarding complaint filed against Defendant Bonnani. Although the Police Department acknowledges receipt of this letter, thus establishing notice of the complaint, there is no record of any departmental investigation regarding the same.

2

1.      **Admissibility with Regard to the City of Albany**

The appears to be no dispute regarding the fact that the foregoing records are admissible against the Defendant City of Albany Police Department. These records were prepared, kept, and maintained in the ordinary course of the Police Department's business. The individuals preparing the reports were under a duty to ensure that the information set forth therein was accurate and the Police Department relied upon the records with regard to personnel decisions.

The evidence regarding the prior complaints is both relevant and admissible with respect to Plaintiff's Monell claim against the City of Albany Police Department.

The Second Circuit has held that a municipal policy will be inferred under Monell where there is "evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) (citing Fiacco v. City of Rensselaer, 783 F.2d 319, 326 (2d Cir. 1986)).

In addition, the Second Circuit has ruled that "plaintiffs injured by a police officer's use of excessive force may establish a basis for municipal liability by alleging that the city's policymakers were 'knowingly and deliberately indifferent to the possibility that its police officers were wont' to violate the constitutional rights of arrestees." Amnesty America v. Town of West Hartford, 361 F.3d 113, 127 (2d Cir. 2004) (quoting Fiacco, 783 F.2d at 326).

In this regard, evidence of prior complaints and the response (or lack thereof) by the Police Department is relevant and admissible. See Fiacco, 783 F.2d at 328 (affirming trial court's decision to admit evidence of prior claims of police brutality and finding that such evidence was relevant to

plaintiff's § 1983 municipal liability theory).

It is anticipated that the Defendant City of Albany may argue that evidence regarding some of the complaints (*e.g.* the complaints filed by Neil and Claudine Williams) should be excluded because the Department determined that the amount of force used was appropriate.

However, the results of a departmental investigation should not determine admissibility where, as here, the adequacy of that investigation is a matter at issue. For example, the evidence indicates that during the months immediately preceding the complaints filed by Neil and Claudine Williams, the Department received at least three (3) other complaints from African-Americans alleging excessive force and involving Defendant Bonnani.

Kevin Tuffey, who was Chief of Police at this time, testified that the departmental determination with regard to a particular complaint did not consider, for example, the fact that the police officer had been previously accused of committing strikingly similar conduct. (Tuffey EBT, at pp. 55-58, attached as Exhibit A hereto). There also appears to have been no internal system for tracking the race of complainants, which would have alerted the Department to the fact that the complaints against Defendant Bonnani were all filed by African-Americans.

As such, where, as here, the adequacy of the Department's investigation is at issue and, indeed, forms part of the basis of Plaintiff's Monell claim, the fact that the investigation found the charges to be "unfounded" does not preclude admissibility of evidence regarding the same.

In addition, it is anticipated that the Defendant City of Albany may seek to exclude the evidence concerning the McLune and Lynch complaints, because there is no indication in the record that any investigation was ever conducted regarding those complaints. Of course, the lack of an investigation is precisely the point. The fact that the Department received and/or had notice of

4

complaints against Defendant Bonnani, but apparently failed to conduct any investigation regarding the same, is highly relevant and admissible evidence with regard to Plaintiff's Monell claim. See Lasher v. City of Schenectady, 02-CV-1395, 2004 WL 1732006, at *11 (N.D.N.Y. Aug. 3, 2004) ("When it is claimed that a municipality negligently supervised its officers in their use of force, the evidence that a number of claims of police brutality has been made by other persons against the city, together with evidence as to the City's treatment of these claims, is relevant.").

Accordingly, it is respectfully submitted that all of the evidence concerning prior excessive force complaints against Defendant Bonnani is relevant and admissible against the Defendant City of Albany Police Department.

    **2.**    **Admissibility with Regard to Defendant Bonnani**

The prior complaints are also admissible with respect to the equal protection and excessive force claims against Defendant Bonnani pursuant to Rule 404 (b) of the Federal Rules of Evidence, which provides, in pertinent part, that evidence of other crimes, wrongs, and acts is admissible to prove, *inter alia*, motive, intent, and identity.

    **a.**    **Equal Protection**

In his equal protection claim, Plaintiff alleges that Defendant Bonnani's use of excessive force was motivated by Plaintiff's race. As noted above, Bonnani's personnel file contains numerous excessive force complaints, all of which were apparently lodged by African-Americans.

This evidence of prior incidents involving African-Americans is relevant and admissible under 404 (b) with respect to the question of Defendant Bonnani's motive and intent, *i.e.* whether he harbored discriminatory animus toward African-Americans See, e.g., Hill v. Taconic Dev. Disabilities Srvs. Office, 283 F. Supp. 2d 955, 959-60 (S.D.N.Y. 2003) (finding that evidence of past

5

discrimination was relevant and admissible because proof of such discrimination "might cause a reasonable trier of fact to conclude that [defendant] harbored discriminatory animus"); Allen v. Perry, 279 F. Supp.2d 36, 46-47 (D.D.C. 2003) (holding that "other acts of discrimination, identical to the kind of discrimination charged, are admissible under Rule 404 (b) to prove motive or intent").

      **b.**      **Excessive Force**

In addition and in the alternative, the prior complaints are admissible on the question of whether Defendant Bonnani maliciously and sadistically used excessive force for the purpose of causing Plaintiff harm. See Eng v. Scully, 146 F.R.D. 74, 80 (S.D.N.Y. 1993) ("A plaintiff in an excessive force case is entitled to prove by extrinsic evidence of other instances that the police officer defendant acted 'maliciously and sadistically for the very purpose of causing harm.'")(quoting Ismail v. Cohen, 706 F. Supp. 243, 253 (S.D.N.Y.1989)); see also O'Neill v. Krzeminski, 839 F.2d 9, 11 n. 1 (2d Cir. 1988).

Moreover, given the striking similarity between the conduct at issue in the instant case and the conduct alleged in the prior complaints, the evidence is also admissible under 404 (b) to show identity and/or *modus operandi*. There is no dispute in this case that Plaintiff was injured during the course of his arrest. The identity of the person responsible for that injury is perhaps the central disputed issue. Plaintiff has testified that Defendant Bonnani inflicted the injury; while Defendant Bonnani and the other officers claim that Bonnani was not involved with the physical arrest.

At least four (4) of seven (7) prior complaints include allegations that the suspect was kicked in the head while handcuffed, which is precisely the type of excessive force at issue in this case. (*See*, complaints filed by McLune, Mackey, Neil Williams, Henderson; attached as Exhibits B, D, F, H, to Docket No. 78, and filed in support of motion for reconsideration). Two (2) of the other

complaints include allegations that the suspect was hit in the face or head. (*See*, complaints filed by Patterson , Morton, attached as Exhibits C & E respectively to Docket No. 78).

Given the striking similarity between the conduct at issue in the present case and the conduct alleged in the prior complaints, admission of such evidence against Defendant Bonnani pursuant to Rule 404 (b) is clearly warranted. See  Ismail, 706 F. Supp. at 253 (holding that prior, similar complaints were admissible as evidence that officer had "a pattern of lashing out physically when he feels his authority is challenged by a citizen with whom he is dealing on the street"); see also Valenzuela v. Abate, No. 92 Civ. 9309, 1996 WL 22373, at *2 (S.D.N.Y. Jan. 22, 1996) (holding that § 1983 plaintiff could "offer evidence of other acts to show a pattern of conduct if those other acts share 'unusual characteristics' with the act charged or represent a 'unique scheme'"); Youngblood v. Brown, 465 F. Supp.2d 270, 280 (S.D.N.Y. 2006) (finding that evidence of prior uncharged crimes was admissible because it demonstrated "unique modus operandi and was thus relevant to establishing defendant's identity as the perpetrator"); United States v. Mitchell, 328 F.3d 77, 82 (2d Cir. 2003) ("Under our Circuit's 'inclusionary approach,' other acts evidence can be admitted 'for any purpose other than to show a defendant's criminal propensity.'").

    c.    **Probative Value Outweighs Prejudicial Effect**

The highly probative value of this evidence substantially outweighs any possible prejudicial effect.  Moreover, any potential prejudice resulting from the admission of such evidence can be readily cured by "carefully crafted limiting instructions." Jeanty v. County of Orange, 379 F. Supp.2d 533, 549 (S.D.N.Y. 2005) ("Although we agree with defendants that the individual defendants may be prejudiced by the testimony of witnesses in support of the Monell claim, we believe any such prejudice could be cured by 'carefully crafted' limiting instructions."); Ingles v. City of New York,

7

No. 01 Civ. 8279, 2005 WL 1354028, at *1 (S.D.N.Y. June 7, 2005) (noting that "limiting instructions can be given when necessary to avoid any prejudice"); Ismail, 706 F. Supp. at 253 (noting that the "Second Circuit has repeatedly recognized the efficacy of such cautionary instructions").

### d. Admissibility of Evidence Regardless of Investigation Results

It is anticipated that Defendant Bonnani may argue that some or all of the prior complaints should be excluded because either (i) the complaint was determined to be "unfounded" or (ii) there is no indication in the record as to how the complaint was resolved. However, neither of these factors should operate to exclude any of the evidence in question and all of the prior complaints are relevant and admissible.

It is well-settled that when considering evidence of alleged prior bad acts under 404 (b), "[c]ourts need not make a preliminary finding that a defendant has committed the other alleged acts." Eng, 146 F.R.D. at 80 (citing Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); see also Ismail, 706 F. Supp. at 253 ("No preliminary finding by the district court that the defendant committed the other act is required. No criminal conviction, civil judgment, administrative finding, or even preliminary judicial finding is necessary before specific acts of other misconduct may be introduced as extrinsic evidence under Rule 404(b) to prove wrongful intent, motive, or pattern of relevant conduct . . . or an 'aggravated state of mind.'") (internal citations omitted).

As explained by the court in Eng, "[i]t does not matter that [the defendant was] not convicted of using excessive force nor found to have done so by a judicial or administrative body. Where malicious, aggravated conduct is purportedly involved, reports of this type are admissible." Eng, 146

F.R.D. at 80.

Accordingly, all of the prior complaints are admissible against Defendant Bonnani under 404(b) as relevant to the issues of intent, motive, and identity.

**B.    Evidence Regarding Alleged Incidents Involving Tasia Brown Should be Excluded.**

Plaintiff recognizes that the question of whether excessive force was used during the course of his arrest will require a consideration of the circumstances surrounding that arrest. However, a number of allegations contained in the arrest records maintained by the Police Department with respect to the November 23, 2002 arrest were only made known to the police officers *after* Plaintiff was arrested.

Specifically, certain of the arrest reports reference an alleged assault by Plaintiff upon Tasia Brown, the mother of Plaintiff's child. These allegations led to the filing of various charges against Plaintiff (*i.e.* burglary, assault with intent to cause physical injury, unlawful imprisonment, endangering the welfare of a minor, and menacing). However, upon information and belief, Plaintiff was never convicted or indicted on these charges.[4]

Further, and more importantly, as explained below, the police were unaware of the allegations made by Ms. Brown until *after* the arrest at issue in this case. As such, the highly prejudicial allegations made by Ms. Brown are irrelevant to the claims at issue in this case and no testimony should be permitted regarding the same. Moreover, any documents admitted into evidence regarding Plaintiff's arrest on November 23, 2002, should be redacted so as to avoid any mention of the Tasia Brown allegations and/or the charges related thereto.

---

[4]Petitioner did plead guilty to a weapons possession charge, which was related to his possession of the weapon recovered by the police after his arrest.

9

Officer Lawrence Heid testified that he was on patrol with Defendant Bonnani on the night in question when an individual (later identified as Larry Ibrahim) approached their unmarked patrol car with an apparent head wound. (Heid EBT, at p. 12, lines 7-11, attached as Exhibit B hereto). Mr. Ibrahim led Bonnani and Heid to the residence located at 195 Livingston Avenue, where the arrest was ultimately effectuated. (Heid EBT, at p. 13, lines 2-10). According to Heid, shortly before the arrest took place, a radio dispatch was received concerning a possible report of a woman screaming on the first floor of the Livingston Avenue residence. (Heid EBT, at p. 18, lines 18-21). After Plaintiff had been arrested and transported to the hospital to be treated for his injuries, Officer Heid interviewed Ms. Brown regarding the alleged assault. (Heid EBT, at p. 34, lines 11-15).

Defendant Bonnani's testimony is largely consistent with Officer Heid's regarding the sequence of events that led to the arrest. (Bonnani EBT, at p. 61-62, attached as Exhibit C hereto). Defendant Bonnani also indicated that the interviews with Ms. Brown regarding the alleged assault occurred *after* Plaintiff was arrested. (Bonnani EBT, at p. 78, lines 4-8).

Officer (now Detective) Joseph Shanahan testified that he responded to the scene based upon "a radio broadcast of a person assaulted with a weapon." (Shanahan EBT, at p. 9, lines 17-18, attached as Exhibit D hereto). Detective Shanahan made no reference to any knowledge prior to the arrest regarding the allegations apparently made by Ms. Brown.

As set forth above, the officers who responded to the scene and participated in Plaintiff's arrest were clearly unaware, at the time of the arrest, of the alleged assault upon Tasia Brown. Accordingly, any allegations made by Ms. Brown after the fact cannot possibly be relevant to whether the force used was excessive given the circumstances *at the time of the arrest*.

Moreover, any minimal probative value this evidence might even arguably have is far

10

outweighed by the extremely prejudicial effect of allegations concerning an assault upon a woman in the presence of a minor child. The evidence should therefore be excluded as irrelevant to the matters at issue and more prejudicial than probative under Rule 403.

Lastly, upon information and belief, Tasia Brown may have recanted some or all of the allegations referenced in the arrest reports. Allowing these allegations into evidence would likely require a "mini-trial" concerning highly prejudicial facts having no bearing whatever on the intent of the officers in question at the time of the arrest.

For the foregoing reasons, it is respectfully submitted that the defense witnesses be barred from referencing the Tasia Brown allegations and that any documents admitted into evidence be redacted to prevent the jury from considering these highly prejudicial claims.

**C.    Testimony from Larry Ibrahim Regarding Alleged Assault Should be Excluded.**

As noted above, Officers Bonnani and Heid are expected to testify that they were led to 195 Livingston Avenue, the scene of the arrest, by an individual later identified as Larry Ibrahim. Mr. Ibrahim approached Bonnani and Heid's unmarked patrol vehicle with an apparent head wound and reported that he had been pistol-whipped. Ibrahim led the officers to 195 Livingston, where he identified Plaintiff as the person who had allegedly pistol-whipped him. However, upon information and belief, Plaintiff was never indicted or convicted of the alleged assault upon Mr. Ibrahim.

The question of whether Plaintiff actually pistol-whipped Ibrahim is irrelevant to this case. There is no dispute regarding the fact that Ibrahim told the police that he had been assaulted and led them to the scene of the arrest. The testimony from the police officers regarding this conversation is sufficient, in itself, to provide the jury with an explanation for the officers' subsequent actions and to put the arrest in context. Any further testimony from Mr. Ibrahim regarding the details of the

alleged pistol-whipping (a) would be cumulative of the testimony to be offered by Bonnani and Heid and (b) would not be probative with respect to the issues presented and would, in fact, be highly prejudicial.

Moreover, Plaintiff denies that he pistol-whipped Mr. Ibrahim and permitting Mr. Ibrahim to testify will result in a "mini-trial" concerning the alleged assault.

Accordingly, it is respectfully submitted that this Court should find that direct testimony from Mr. Ibrahim regarding the alleged assault is inadmissible on the grounds that it is cumulative, unnecessary, and highly prejudicial.

**D.     Evidence of Plaintiff's Prior Convictions Should be Excluded**

As of the date hereof, Plaintiff has not received written notice from Defendants that they intend to introduce any convictions from more than ten (10) years ago for impeachment purposes under Rule 609 of the Federal Rules of Evidence. In addition, upon information and belief, Plaintiff does not have any felony convictions during the past ten (10) years that would otherwise be admissible under Rule 609, other than the weapons possession conviction that resulted from the arrest in question.

Out of an abundance of caution, to the extent that Defendants seek to use any prior conviction for impeachment purposes, Plaintiff requests (a) that the undersigned counsel be provided with advance written notice of the same and (b) that this Court rule that evidence of any such prior conviction(s), regardless of the timing thereof, is inadmissible.

Given the testimony from the police officers regarding Plaintiff's possession of a handgun on the night in question and the alleged pistol whipping of Larry Ibrahim, the "jury will have knowledge that Plaintiff is not of unblemished character." Eng, 146 F.R.D. at 78. The minimal

probative value of evidence regarding unrelated prior convictions would be far outweighed by the substantial danger of unfair prejudice. Accordingly, any such evidence should be deemed inadmissible pursuant to Rule 609 (a)(1) and Rule 403.

                                        Respectfully submitted,

Dated: February 7, 2008                  GETNICK LIVINGSTON ATKINSON
                                                GIGLIOTTI & PRIORE, LLP

                                                /s/Patrick G. Radel
                                                Patrick G. Radel, Esq., of Counsel
                                                Bar Roll No: 512794
                                                Attorneys for Plaintiff Philip Lewis
                                                258 Genesee Street, Suite 401
                                                Utica, New York   13502
                                                Telephone (315) 797-9261